IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TRACEY F. TURNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0298-WS-M |
| ) | |
| **STATE OF ALABAMA,** ) | |
| **ADMINISTRATIVE OFFICE OF** ) | |
| **COURTS,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 25). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 26, 31-32, 39), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes that the motion for summary judgment is due to be granted.

**BACKGROUND**

The plaintiff was employed by the defendant as a juvenile probation officer in Baldwin County from 1992 until her termination. In January 2010, the plaintiff filed a charge of discrimination, alleging race discrimination by the defendant in the administration of discipline for attendance, tardiness and timekeeping issues. (Doc. 26, Exhibit 8). The EEOC mediated a settlement agreement that resolved the charge. (*Id.*,

---

[1] The defendant's motion to correct/substitute exhibit, (Doc. 35), to which the plaintiff declined to object, (Doc. 38), is **granted**.

Exhibit 14).  Therein, the defendant agreed to "remove from the Charging Party's personnel files any employee counseling records or notices of disciplinary action."  (*Id*.).

The settlement agreement also contained the following provision:

> This mediation settlement agreement shall be confidential between the parties, and neither the Charging Party nor the Respondent will disclose the terms of the mediation settlement agreement to any other person or party, except as may be required by law.

(Doc. 26, Exhibit 14).

The plaintiff was terminated by Judge Carmen Bosch on April 12, 2010.  (Doc. 26, Exhibit 17).  Her contemporaneous explanation for her action reads as follows:

> Ms. Turner has continued to undertake a course of conduct that is detrimental to the function and operation of the Juv[enile] Probation office, to a degree that I find detrimental to the operation of said office as a whole.  Ms. Turner's most recent action being a breach of the recently signed mediation agreement between the State and herself.  I consider said breach to be wholly unacceptable, and to be insubordination such that termination is the only option available to allow this office to function in an acceptable way.

(*Id*.)

The single count of the complaint alleges that the defendant "illegally retaliated against Plaintiff for filing the Charge by terminating her employment."  (Doc. 1 at 4).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*.  "Even after *Celotex* it is never enough simply to state that the

non-moving party cannot meet its burden at trial." *Id.*; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust*

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

*Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

Similar to discrimination cases, a retaliation case not based on direct evidence follows a burden-shifting format.  First, the plaintiff must make out a prima facie case.  Second, the defendant must produce evidence of one or more legitimate, non-retaliatory reasons for the plaintiff's adverse treatment.  Third, the plaintiff must show that the defendant's proffered reasons are a pretext for prohibited retaliatory conduct.  *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

"A prima facie case of retaliation under Title VII requires the plaintiff to show that:  (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  The defendant "assumes that the Plaintiff can prove a prima facie case of retaliation."  (Doc. 26 at 22).  The Court therefore indulges the same assumption.

To meet its intermediate burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence."  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *accord Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998) (the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision").  The defendant articulates as its non-retaliatory reason for the plaintiff's termination "that she violated the confidentiality clause of the EEOC mediation agreement."  (Doc. 39 at 5).  This is a legally sufficient reason for termination, and it is supported by admissible evidence.  (Doc. 26, Exhibit 17).  The plaintiff makes no argument to the contrary.  (Doc. 31 at 57).

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the

employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for [retaliation]." *Crawford*, 529 F.3d at 976 (internal quotes omitted). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

The plaintiff advances several arguments in favor of her position that the defendant's articulated reason for firing her is a pretext for unlawful retaliation. First, she argues that the settlement agreement provided that "the exclusive method or remedy for enforcement of a violation was through specific enforcement in a court of law, not the route of termination." (Doc. 31 at 58). The agreement, however, states only that it "may be specifically enforced in court by the EEOC … or the parties and may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged." (Doc. 26, Exhibit 14). On its face, this language permits either party to sue to enforce the agreement but does not require either to do so in lieu of pursuing any other remedy.

It is uncontroverted that Judge Bosch made the decision to terminate the plaintiff. (Doc. 26, Exhibit 17; Doc. 31 at 59). The plaintiff finds it suspicious that Judge Bosch denied having authority to enforce the settlement agreement (since she was not a party to it) and yet fired the plaintiff for violating it. (Doc. 31 at 58-59). The testimony on which the plaintiff relies, however, states only that Judge Bosch felt it was not her decision whether to approach the EEOC concerning the plaintiff's breach of the agreement; she

did not deny having authority to discipline the plaintiff for the breach. (*Id*. at 15; Doc. 32, Exhibit 4 at 46-47). On the contrary, it is uncontroverted that Judge Bosch, as presiding juvenile court judge, has exclusive hiring and firing authority over juvenile probation officers such as the plaintiff, (Doc. 26, Exhibit 2 at 9-10; Doc. 32, Exhibit 4 at 46; Doc. 31 at 2), a state of affairs dictated by statute. Ala. Code § 12-5A-8(2). The plaintiff has identified no evidence indicating that this statutory authority somehow does not extend to violations of the settlement agreement.

In her third effort to show pretext, the plaintiff denies that she violated the confidentiality agreement to begin with. (Doc. 31 at 50-51; Doc. 32, Exhibit 1 at 41). It is uncontroverted, however, that two other juvenile probation officers reported that the plaintiff volunteered to them information concerning what was said and done at the mediation conference and that the plaintiff told one of these witnesses that the agreement required the defendant to purge her personnel file of complaints. (Doc. 26, Exhibits 15, 16). It is further uncontroverted that Judge Bosch was made aware of the substance of these reports and relied heavily on them in making her decision to terminate the plaintiff. (*Id.*, Exhibit 18 at 10-11, 16; Doc. 32, Exhibit 4 at 50-51). Even if the plaintiff is correct, and she did not divulge to another probation officer that the agreement required the defendant to purge her personnel files, that of itself does not support a showing of pretext. The question is only whether Judge Bosch believed the plaintiff had done so and fired her on that basis.[3] These reports gave Judge Bosch ample reason to believe the plaintiff had done so, especially given the plaintiff's known difficulty remaining silent.[4]

---

[3] "We can assume for purposes of this opinion that the complaining employees interviewed by Rives were lying through their teeth. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill believed that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *accord Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The question is not whether it really was Alvarez's fault that assignments were not completed on time, or whether she did delegate excessively, or whether she was aggressive and rude to her colleagues and superiors, or whether she actually lost an important document or truly did fall asleep at her desk. The question is whether her employers (Continued)

The plaintiff nevertheless gamely endeavors to show that Judge Bosch could not have believed she had breached the confidentiality agreement. She points to a conflict in Judge Bosch's testimony as to whether she read the witnesses' statements before making her decision to terminate the plaintiff. (Doc. 31 at 11-14, 59). Even if Judge Bosch did not read the statements beforehand, it is uncontroverted that the information in the statements was relayed to her before she made the termination decision. (Doc. 26, Exhibit 18 at 10-11, 16). Since it is uncontroverted that Judge Bosch was aware of the substance of the declarations when she fired the plaintiff, it can scarcely matter whether she had read them personally.

In a similar vein, the plaintiff complains that Judge Bosch, before terminating her, did not interview her or ask for her version of events. (Doc. 31 at 12-13, 59). But the plaintiff provides no evidence that the defendant had a policy or practice requiring such an interview. *See, e.g., Walker v. Prudential P&C Insurance Co.*, 268 F.3d 1270, 1279 (11th Cir. 2002) ("The bending of established rules may, of course, be suggestive of discrimination."). Much less has she shown that any deviation from the policy "occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002); *accord Berg v. Florida Department of Labor and Employment Security*, 163 F.3d 1251, 1255 (11th Cir. 1998) (the "*inconsistent* application of employment policies [may be]

---

were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about Alvarez as cover for discriminating against her because of her Cuban origin.").

[4] The plaintiff herself presents the testimony of Terri Robertson, another juvenile probation officer, that the plaintiff "does not hold back," that she "spoke her mind," and that her outspokenness created "tension" and "turmoil" in the office. (Doc. 31 at 34-35; Doc. 32, Exhibit 3 at 21-22). As the plaintiff also notes, Judge Bosch was fully aware that "there would be discord between and among the employees there at the office based on things that had been said by Mrs. Turner to different ones of them, sometimes about each other, and sometimes to third parties about them that would get back to them, and things like that." (Doc. 31 at 19; Doc. 32, Exhibit 4 at 54-55).

circumstantial evidence of discrimination") (emphasis added).  Given the statements of two apparently impartial witnesses and the plaintiff's known penchant for such behavior, the failure to interview the plaintiff does not suggest that Judge Bosch did not truly believe the plaintiff had breached the confidentiality provision of the settlement agreement.

The plaintiff also objects that Judge Bosch did not consult with the EEOC before terminating her.  (Doc. 31 at 15-16, 59).  It is true that the settlement agreement provides that "[t]he parties agree that the EEOC … is authorized to investigate compliance with this agreement," (Doc. 26, Exhibit 14), but on its face this language merely permits EEOC involvement without requiring it.  And, as noted, it was the defendant rather than Judge Bosch that was a party to the agreement and thus situated to involve the EEOC.  There is nothing suspicious in Judge Bosch's failure to consult the EEOC.

The plaintiff notes that Judge Bosch did not consider imposing some lesser form of discipline than termination.  (Doc. 31 at 14-15, 25-26). The plaintiff, however, offers no evidence that law or internal policy required or even encouraged Judge Bosch to do so.  The plaintiff suggests that Judge Bosch was "under the impression that termination was the only remedy," (*id*. at 58), but by definition an "impression" reflects an honest belief, so that her mistaken impression could not be evidence of pretext.

At any rate, Judge Bosch did not believe that her hands were tied by some outside force or rule.  While the termination notice states that "termination is the only option available," it explains that this is so because, in the face of the plaintiff's "wholly unacceptable" act of "insubordination," termination is the only remedy that would "allow this office to function in an acceptable way." (Doc. 26, Exhibit 17).  Whether a lesser sanction would actually have had an equally salutary effect is legally irrelevant.  "We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions … as long as those decisions were not made with a discriminatory motive." *Alvarez v. Royal Atlantic Developers, Inc*., 610 F.3d 1253, 1266 (11th Cir. 2010).  The selection of termination as the appropriate sanction

does not suggest that Judge Bosch retaliated against the plaintiff for filing an EEOC charge.

As noted, the termination notice refers to the plaintiff's prior history of "conduct that is detrimental to the function and operation of" the office as providing the background to the plaintiff's final, terminable offense. (Doc. 26, Exhibit 17). The plaintiff objects that this reference "is merely a pretext for discrimination." (Doc. 31 at 58). Since the plaintiff brings no discrimination claim but only a retaliation claim, her argument is legally irrelevant. And since the defendant does not rely on this history as its legitimate, non-retaliatory reason for firing her, it is likewise irrelevant whether the plaintiff can poke holes in it.[5]

At any rate, the plaintiff has no evidence that Judge Bosch's reference to prior history was pretextual. The plaintiff claims Judge Bosch's testimony was vague and ambiguous, (Doc. 31 at 58), but she clearly testified that the plaintiff made inappropriate statements to and about other probation officers on an approximately monthly basis, including telling a law enforcement officer that a probation officer was cheating on their spouse, thereby upsetting staff and creating ongoing discord in the office. (Doc. 32, Exhibit 4 at 54-58). Corroborating Judge Bosch's testimony was that of another juvenile probation officer. *See* note 4, *supra*. The plaintiff points out that she was never disciplined or addressed concerning such conduct, (Doc. 31 at 59), but this is not significant evidence that the conduct did not occur or that Judge Bosch did not believe it had occurred, especially given the probation officer's substantiating testimony and the plaintiff's failure in this lawsuit to deny having engaged in the conduct.

---

[5] The plaintiff does not argue that Judge Bosch did not base her termination on her violation of the confidentiality agreement but on her history of disruptive conduct. Even had she done so, and even could she support such a proposition despite the contrary language of the termination notice, it would help her case only if she could also show that such reliance on her history was itself a pretext for retaliation. *E.g., Springer*, 509 F.3d at 1349. As discussed in text, she cannot do so.

Next, the plaintiff suggests that chief probation officer Caldwell Adams also violated the settlement agreement but was not disciplined. (Doc. 31 at 59). Unlike the plaintiff, however, Adams did not divulge to others the terms of the agreement. Instead, according to the testimony on which the plaintiff relies, Adams told a juvenile probation officer friendly to the plaintiff that a "gag order" had been imposed, that he could say nothing else, and that she should tell him if the plaintiff tried to speak to her about the agreement. (Doc. 31 at 30-34; Doc. 32, Exhibit 3 at 15, 19-21). "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, ... we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotes omitted). As in discrimination cases, so also in retaliation cases: "To qualify as circumstantial evidence of retaliation, the quantity and quality of the comparator's misconduct must be nearly identical to the plaintiff's misconduct." *Peppers v. Traditions Golf Club*, 457 Fed. Appx. 905, 907 (11th Cir. 2012). Adams' statement that the agreement was confidential was a far cry from the plaintiff's disclosure of the terms that were required to remain confidential. That Adams was not disciplined is not evidence of pretext.[6]

In a similar vein, the plaintiff complains that the defendant breached the settlement agreement because, while it called for a purging of her personnel files, and while the

---

[6] Although the discussion in text fully requires rejection of the plaintiff's argument, it is also true that "[e]mployees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct." *Amos v. Tyson Foods, Inc.*, 153 Fed. Appx. 637, 647 (11th Cir. 2005); *accord Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (for his prima facie case, the plaintiff must show that his comparators' "*known* violations were consciously overlooked") (emphasis added). The plaintiff has identified no evidence that Judge Bosch was aware that Adams had mentioned the existence of a gag order.

central file kept in Montgomery was purged, Adams did not purge the local version of the file, which he maintained. (Doc. 31 at 43, 60). The plaintiff has not explained how this alleged breach[7] could insulate her from discipline for her own breach. Nor has she identified any evidence that Judge Bosch was aware that the local file had not been purged. *See* note 6, *supra*.

Finally, the plaintiff argues that Adams "had a goal to get rid of Turner" and that "[t]his was accomplished." (Doc. 31 at 59). But it is uncontroverted that Judge Bosch, not Adams, made the decision to terminate, and the plaintiff raises no "cat's paw" argument.[8] Nor has she argued, or produced evidence, that Adams desired to get rid of her specifically in retaliation for filing an EEOC charge as opposed to, say, a racially discriminatory animus or a merely disagreeable disposition.[9] Adams' personal agenda is therefore irrelevant.

## CONCLUSION

The plaintiff strives valiantly, but her arguments and evidence fail to create a jury issue as to whether the defendant's articulated reason for her termination was a pretext for unlawful retaliation. Her claim therefore fails as matter of law. Accordingly, and for the reasons set forth above, the defendant's motion for summary judgment is **granted**. Judgment shall be entered accordingly by separate order.

---

[7] The defendant contends that the settlement agreement addressed only the official personnel file in Montgomery, not the local version. (Doc. 39 at 2, 7). Since it would not alter the result, the Court need not resolve the disagreement.

[8] "Under a 'cat's paw' theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct." *Crawford*, 529 F.3d at 979 n.21.

[9] On the contrary, the plaintiff traces Adams' goal of ridding the office of her back to at least September 2009 – four months before the plaintiff filed her EEOC charge. (Doc. 31 at 27-28; Doc. 26, Exhibit 9).

DONE and ORDERED this 28th day of September, 2012.

                                              <u>s/ WILLIAM H. STEELE</u>
                                              CHIEF UNITED STATES DISTRICT JUDGE